IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 18, 2025

**ISAIH TATUM v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for McMinn County**
**No. 23-CR-151      Sandra N. C. Donaghy, Judge**

_____

**No. E2024-01196-CCA-R3-PC**

_____

Petitioner, Isaih Tatum, pleaded guilty to possession of more than 0.5 grams of methamphetamine with intent to sell or deliver and unlawful possession of a weapon by a convicted felon and received an agreed sentence of ten years. He subsequently filed a petition for post-conviction relief, which the McMinn County Criminal Court denied after a hearing. On appeal, Petitioner contends that the post-conviction court erred when it denied relief on his claims that he was denied the effective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. Following a thorough review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Andrew E. Bateman, Athens, Tennessee, for the appellant, Isaih Tatum.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Hornsby, Assistant Attorney General; Stephen Hatchett, District Attorney General; and Matthew Walden, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Following a traffic stop on December 4, 2022, Petitioner was arrested and charged with possession of more than 0.5 grams of methamphetamine with intent to sell or deliver, possession of drug paraphernalia, and unlawful possession of a weapon by a convicted

felon. The charges were brought to criminal court for a plea by information through an agreement negotiated by the parties in general sessions court.

### *Plea Submission Hearing*

On January 13, 2023, Petitioner pleaded guilty to possession of more than 0.5 grams of methamphetamine with intent to sell or deliver and unlawful possession of a weapon by a convicted felon. During the plea submission hearing, the State offered the following factual basis for Petitioner's guilty plea:

> Your Honor, [on] December 4th, of 2022, a [d]eputy with the McMinn County Sheriff's Department was watching traffic on Interstate 75, and [Petitioner] was, in a vehicle that passed by this [o]fficer with what appeared to be an illegal window tint. The [o]fficer performed a traffic stop on the vehicle, found that the registration came back to a driver with a revoked license. When he approached the car, he could smell marijuana as the window was being rolled down. He spoke at that time with the driver and then [Petitioner], who was a passenger in the vehicle at the time.
>
> The officer also observed a glass pipe inside the vehicle. [Petitioner] told the [o]fficer that that was his and anything else in the car was his. When the [o]fficer asked if there was anything else in the car, [Petitioner] said that he would just have to search it. Officers conducted a probable cause search of the vehicle and retrieved the pipe along with a .380 pistol, [and] a small bag of methamphetamine under the passenger seat.
>
> In the seat was a toboggan that had two more bags of suspected methamphetamine and also a digital scale. Bag one weighed approximately three grams, bag two weighed approximately three grams, and then the final bag weighed approximately 21 grams.
>
> Behind the passenger seat, officers also found a 9mm semi-automatic rifle.
>
> When [Petitioner] was placed under arrest, officers also found another set of digital scales in [Petitioner's] pocket.
>
> [Petitioner] is a convicted felon out of the State of Tennessee for a prior robbery conviction.

Before accepting Petitioner's guilty plea, the trial court reviewed the plea paperwork with Petitioner. The court stated:

> On count one, it says you have an agreement with the State to plead guilty as charged. The State is recommending on this case that you be sentenced as a [R]ange [I] offender to a period of [ten] years. It says this is a sentence that is to be served.
>
> They have awarded you the jail credits that you have built from December 4 until today.
>
> And it also says they agree this case will be concurrent or at the same time with a sentence you have out of Hamilton County and with count two.

The trial court also discussed Petitioner's intent to plead guilty to unlawful possession of a weapon by a convicted felon in count two and explained that Petitioner would be sentenced to four years as a Range II offender. When asked by the trial court, Petitioner agreed that he understood what he was accused of and the potential punishments for the charges and that he was waiving his right to have a grand jury review the charges. The court found that Petitioner "freely and voluntarily" waived his right to grand jury review and accepted the court's jurisdiction over the case.

The trial court then reviewed Petitioner's constitutional rights, explaining:

> [T]he Constitution guarantees you the right to a speedy and public trial by jury. At a jury trial, the State would have to prove by evidence beyond a reasonable doubt that you committed the elements of the crimes charged.
>
> You would have the right to confront the witnesses against you, and those persons could be cross[-]examined on your behalf by your attorney.
>
> You have the right to use the power in the process of the [c]ourt to make the State show you the evidence to be used against you or to make your witnesses come to a jury trial.
>
> At a jury trial, you could testify if you chose to do so. You have the right to remain silent, and no one can make you testify.
>
> You also have the right to be represented by an attorney, and that right attaches at all stages of the proceeding.

Petitioner indicated that he understood his constitutional rights, and he agreed that, by pleading guilty, he was waiving those rights.

Petitioner stated that he was not under the influence of drugs or alcohol. When asked by the court about his mental health, Petitioner said that he had been treated for mental health problems previously but indicated that those problems did not prevent him from understanding "what's going on here[.]" Petitioner stated that he had had no problems communicating with trial counsel. When questioned by the trial court, trial counsel stated that he had no concerns about whether Petitioner was competent to plead guilty. Trial counsel stated, "[Petitioner] and I have had no problems communicating. He's wanted to take this offer since we got it. He's been able to discuss the case with me and his criminal history, his exposure, everything else."

Following this colloquy, the trial court told Petitioner:

> You asked me some good questions, and as I answered those questions for you, it was clear to me that we were communicating about your case. And so, in spite of those problems you've been having, based on all of that information, I make a finding that you know and understand what you're doing, and I find that you are legally competent to make big decisions like giving up your constitutional rights.

Petitioner agreed that he signed the plea paperwork, that the resolution of the charges was in his best interests, and that he was pleading guilty because he was guilty. The trial court accepted Petitioner's guilty plea, finding that Petitioner understood what he was doing and that he was "freely and voluntarily" giving up his rights to enter the plea agreement. Pursuant to the agreement, the trial court sentenced Petitioner, as a Range I offender, to ten years for possession of more than 0.5 grams of methamphetamine with intent to sell or deliver. The court sentenced Petitioner, as a Range II offender, to four years for unlawful possession of a weapon by a convicted felon and ordered the sentence to run concurrently with the ten-year sentence. The court also ordered Petitioner's effective ten-year sentence to be served concurrently with his four-year sentence in Hamilton County.

### *Post-Conviction Proceedings*

On May 23, 2023, Petitioner filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, counsel filed a notice that no amended petition would be filed. The State then filed its written response to the petition.

At an evidentiary hearing, trial counsel testified that he was an Assistant Public Defender with the 10th Judicial District Public Defender's Office. Trial counsel said that he was appointed in general sessions court to represent Petitioner, who was in custody at the time. Trial counsel stated that he did not conduct a preliminary hearing on Petitioner's charges because the State made Petitioner a plea offer. Regarding the offer, trial counsel explained that Petitioner agreed to an effective sentence of ten years, with a thirty-percent release eligibility, to serve in the Tennessee Department of Correction. Counsel said that, as part of the agreement, Petitioner's ten-year sentence would be ordered to run concurrently with a sentence in Hamilton County. Trial counsel recalled that the "offer sheet" from the State indicated that Petitioner had two prior felony convictions for robbery in Hamilton County, for which Petitioner was sentenced to four years' probation.

Trial counsel testified that although he did not recall many specifics about his conversations with Petitioner in general sessions court, his typical practice was to talk to his client about the State's offer, review the affidavit of complaint with the client, "talk about their exposure, how bad it could get, what they're looking at, [and] what the proof looks like." He said that he "definitely" spoke to Petitioner about his potential sentencing exposure. He explained that because Petitioner had two prior convictions for robberies that occurred on different days, Petitioner would have been a Range II offender and would "have been looking at [twelve] to [twenty] years, could have been on top of his four years out of Hamilton [County]."

Trial counsel said that Petitioner agreed to enter a plea by information, waiving grand jury review of his case. He stated that, after Petitioner's appearance in general sessions court, he went to the jail and met with Petitioner. He testified that he reviewed the plea paperwork with Petitioner at the jail. Trial counsel testified that he explained to Petitioner that there was no guarantee that Petitioner would receive parole after serving thirty percent of the ten-year sentence. He said that he told Petitioner, "The fact that you're on probation for four years for a robbery out of Hamilton County means you probably won't get paroled the first time."

Trial counsel recalled that Petitioner asked about discovery and that he explained to Petitioner:

> I can request discovery, two ways we can do that. I can either tell the State to just indict the case, present it to the grand jury, and we won't be doing the plea on the January date. Or on the January date, we can waive the grand jury and allow the judge to take jurisdiction of the case, and then I can request discovery, either one of those routes. But . . . I told him, as I tell every client, if I do that, the State's probably going to revoke this offer. So you'll probably be looking at [twelve] to [twenty years] instead.

Trial counsel continued, "And I do recall [Petitioner's] not wanting that. He did not want to risk more exposure." He said that Petitioner "was adamant that he didn't want that offer to go away."

Trial counsel said he discussed with Petitioner the possibility of going to trial and the likelihood of a good outcome. He said that they talked about Petitioner's potential testimony and his two prior robbery convictions and that the convictions would likely be admissible to impeach Petitioner's credibility. He did not recall whether Petitioner asked about filing a motion to suppress; however, he indicated that, if Petitioner had asked, he would have explained to Petitioner that he would need to obtain discovery and review the evidence, which would likely lead to "the offer being pulled."

Trial counsel testified:

We talked about the makeup of the jury pool here in McMinn County. As I do with all of my clients who are any, if they're not Caucasian, I always advise them that McMinn County is primarily white, overwhelming majority white, very conservative county. And you will have a jury of your peers in McMinn County, which would look a lot different than a jury of his peers in Hamilton County. I know I explained that to him.

The petition alleges that I told him the county was full of racists, I did not say that. But I will not dispute that maybe what he heard from what I said, but that's not what I said.

Counsel continued:

I would be doing [clients] a disservice if I didn't talk to them about the jury pools, the makeup of the jury pools here in McMinn County, being conservative, it's a very conservative county and being overwhelmingly white. And that's not to scare my clients. That's just, I don't want them to come in here for a trial and look out there at [seventy-five] people and see one black face out there as a potential juror, because that's going to scare them. And if I haven't prepared them for that, then I'm not doing my job. So that's the discussion we had.

Trial counsel recalled explaining everything "very thoroughly" to Petitioner because it seemed like he "needed extra explaining," and trial counsel "wanted to make sure [Petitioner] understood." Trial counsel testified that Petitioner's case was resolved quickly—about forty days after his arrest—but that this was "not uncommon for [an]

information plea." He testified that he did not interview any witnesses or investigate the case in this time. He explained:

> With an information plea like this, that's just not what we normally do. Now, had [Petitioner] told me at the jail, I don't want to take this, I want to get discovery, I would have gotten discovery. Once I reviewed discovery, if there were witnesses that needed to be interviewed, including the person who was driving the car, I would have done all that.

Trial counsel testified that he met with Petitioner for a third time on the day of the plea submission hearing in criminal court. He said that prior to the plea, he reviewed with Petitioner the plea paperwork and Petitioner's constitutional rights. Counsel recalled that Petitioner was "concerned with this [case] running with Hamilton County and that he wanted to get to Hamilton County to resolve that." He said that there was nothing in his discussions with Petitioner prior to the plea that gave him any reason to think Petitioner did not want to enter the plea agreement.

Petitioner testified that, the day he appeared in general sessions court, another attorney from trial counsel's office initially represented him. Petitioner stated that he received an offer from the State that he plead guilty to the offenses in exchange for a fifteen-year sentence, but he immediately refused the offer and said that he wanted discovery. He said that, after he rejected the offer, his case was assigned to trial counsel.

Petitioner said that he spoke to trial counsel in court that day. Regarding his conversation with trial counsel, Petitioner testified:

> And [trial counsel] said, well, they offered you [fifteen years] at [thirty] percent, and I said no. And I said, you know, I want to take this all the way. And he was like, well, if you take it all the way, this is what's going to happen. They're not giving you no other options.
>
> . . . .
>
> That I was going to either take [fifteen years] or go to trial. And then he explained to me that I was black and they were white, and that I wouldn't have a fair trial. That's so many words, that's what he was saying.

Petitioner claimed that trial counsel "said it out of his own mouth that the county was racist, full of racists" and that he would be found guilty if he went to trial.

- 7 -

Petitioner said that he instructed trial counsel to "go in there and see if you can get another offer of probation because I'm on probation." Petitioner stated that trial counsel "went back there and he talked to someone" and counsel "came back with [ten] years." Trial counsel explained to Petitioner that, if he did not accept the offer, the State was going to indict him, and Petitioner would go to trial. Petitioner denied that trial counsel discussed with him that he was a Range II offender. He stated that he asked trial counsel about discovery, and counsel told him that "the only discovery was the affidavit." Petitioner indicated that he asked trial counsel to file a motion to suppress the evidence in general sessions court but that counsel told him he "couldn't do that in [s]essions [c]ourt."

Petitioner testified that he believed the offer he accepted was for a ten-year "probated" sentence. He said that he thought "if I plea[d] guilty today I would be getting out and doing my . . . remainder of my time on probation from Chattanooga, and I would come out on probation." The following exchange occurred during Petitioner's testimony:

> [Q.] And are you saying that [trial counsel] told you at the [s]essions [c]ourt level when you made this agreement for [ten] years that that was going to be straight probation?

> A. Yes. He told me after I finished the Hamilton County sentence that I would be kicked out. It depends on the T. D. O. C. whenever they kick me out to probation. Yes.

> Q. But that this [ten] years was not going to add any other actual in-custody time?

> A. No. After I got through with the [Hamilton County] violation, I would come out on [ten]-year probation.

> Q. Okay.

> A. That's why I plead[ed].

Petitioner testified that he spoke with trial counsel three times before he entered his guilty plea—the first time in general sessions court, the second time in the jail, and the third time in criminal court. Petitioner said that, in speaking with trial counsel before the plea submission hearing, counsel instructed him to say yes or no to everything and to not ask any questions during the hearing. Regarding the plea paperwork, Petitioner testified that he "didn't get a chance to read everything because it was kind of like a little rush[.]" Petitioner claimed that he did not understand the plea agreement and that he did not understand the consequences of his plea. He testified that, if he had understood the plea

- 8 -

agreement required him to serve a ten-year sentence in confinement, he would not have pled guilty and would have proceeded to trial.

At the end of the hearing, the post-conviction court noted that it did not have a guilty plea hearing transcript to review.[1] The court said that it did not specifically recall Petitioner's guilty plea submission hearing, but it noted that in "every single case," it had "a standard list of questions" that it reviewed with defendants. The court explained, "First, I read what the agreement is. And so, had I done that in your case, there would have been no question in my mind, or yours, that it was a [ten]-year sentence to be served and that there was no mention of probation." The court also noted that it would have asked whether Petitioner was being forced into pleading guilty and explained that the court was "quite certain" Petitioner answered negatively because otherwise the court would not have accepted the plea.

The post-conviction court stated:

> [A]lthough I cannot say what I did or did not do at your plea hearing, I feel 100 percent convinced that if you had given me any indication that you did not understand what was going on, that somebody forced you or pressured you in any way, that you had lingering questions, that you were under the influence of withdrawing from drugs or suffering the psychological [issues], if any of that had been, I would have said, I am not taking this plea. And so the reverse of that is, you must have told me you understood, you want to do your case this way, and I would have gone through things with you.

The post-conviction court explicitly accredited trial counsel's testimony over that of Petitioner. Although the court said it was "troubled" by Petitioner's testimony that trial counsel described the county as "racist," it did not accredit Petitioner's testimony about the conversation with trial counsel. The court accredited trial counsel's testimony that he explained to Petitioner he could not obtain discovery in general sessions court and that he explained the various options open to Petitioner. The court concluded that Petitioner decided that ten years "was a whole lot better" than twelve to twenty years.

Regarding Petitioner's claim that his plea was involuntary, the post-conviction court found that its general practice was to be "detailed on pleas" to ensure there was enough

---

[1] A transcript of Petitioner's guilty plea submission hearing and a transcript of the post-conviction hearing were filed with the criminal court clerk on October 10, 2024, while this matter was on appeal. Both transcripts were then transmitted to this court and are part of the appellate record. The transcript of the guilty plea submission hearing contains a certification by the trial court authenticating the transcript, and it contains a certificate executed by the official court reporter.

proof to conclude that the defendant understood everything and was freely and voluntarily waiving his or her rights. The court concluded, "I am confident that I would not have accepted your plea if I did not make those very conclusions at your plea hearing." Addressing his ineffective assistance of counsel claim, the post-conviction court found that Petitioner failed to establish the claim "by clear and convincing evidence" and denied post-conviction relief.

Following the hearing, the post-conviction court entered a written order denying relief. In its order, the court made several additional findings. The court found that Petitioner was "familiar with criminal proceedings" based upon Petitioner's Hamilton County case and prior felony convictions, that Petitioner "was aware of his right to have a trial and chose to waive that right for the benefit of his plea agreement," and that Petitioner made the decision to accept the plea offer "with the advice of counsel" and to "specifically avoid exposure to a greater penalty based on the weight of the drugs found." The post-conviction court also noted that it had reviewed Petitioner's court file, which had included plea paperwork and waivers signed by Petitioner.[2] The court indicated that the documents included acknowledgments about "a lack of pressure or coercion," "effective assistance of counsel," "waiver of the right to a trial," and "certification by trial counsel of the opinion that the plea was voluntarily made." It found that Petitioner "knew of his right to reject any offer and take the case to trial" and discredited any testimony from Petitioner otherwise. The court concluded that Petitioner had failed to establish either of his claims and denied relief.

This timely appeal follows.

## Analysis

On appeal, Petitioner contends that the post-conviction court erred when it denied relief on his claims that he was denied the effective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. Petitioner asserts that trial counsel erroneously advised him he would be "getting out on probation" rather than serving a ten-year sentence. He maintains that trial counsel would not provide him with discovery materials and told him that he would not receive a fair trial in McMinn County because "[he] was black and they were white[.]" Petitioner further asserts that he did not understand the agreed sentence and that, had he understood, he would not have accepted the plea and would have gone to trial. He also contends that the proof relied upon by the post-conviction court was insufficient because there was no transcript of his guilty plea presented at the hearing. The State responds that the post-conviction court properly denied relief.

---

[2] The post-conviction court did not review the transcript of the guilty plea hearing because it was late filed with the trial court clerk.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id*.; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

I. Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see Goad*, 938 S.W.2d at 369. In order to prove that

counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dorsey v. State*, No. W2021-01135-CCA-R3-PC, 2022 WL 2840738, at *4 (Tenn. Crim. App. July 21, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the second, or 'prejudice,' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

In this case, Petitioner failed to establish that trial counsel's performance was deficient. Petitioner claims that counsel erroneously advised him that he would receive a sentence of ten years' probation under the plea agreement. However, the post-conviction court expressly discredited Petitioner's testimony in this regard and accredited the testimony of trial counsel. Counsel testified that he met with Petitioner three times, reviewed the ten-year plea offer and his waivers with him, discussed Petitioner's various options and potential outcomes, and discussed Petitioner's sentencing exposure. Trial counsel testified that he communicated the State's offer of an effective ten-year sentence to serve in the Tennessee Department of Correction. Trial counsel testified that, in discussing the offer with Petitioner, he explained to Petitioner that there was no guarantee he would receive parole after serving thirty percent of the ten-year sentence. He said that he explained everything "very thoroughly" to Petitioner to "make sure he understood." Moreover, Petitioner signed the plea paperwork, which stated: "On count one, it says you have an agreement with the State to plead guilty as charged. The State is recommending . . . that you be sentenced as a [R]ange [I] offender to a period of [ten] years. It says this is a sentence that is to be served." The transcript of the plea submission hearing confirms that Petitioner understood the terms of the plea agreement.

Petitioner also maintains that trial counsel would not provide him with discovery materials. At the evidentiary hearing, trial counsel testified that when Petitioner asked about discovery, he explained to Petitioner that he could request discovery but that the State would likely revoke the plea offer. Trial counsel stated that Petitioner did not want to "risk more exposure" and "was adamant that he didn't want that offer to go away." The post-conviction court accredited the testimony of trial counsel.

Finally, Petitioner contends that trial counsel rendered deficient performance by advising Petitioner that he would not receive a fair trial in McMinn County because "[he] was black and they were white[.]" Again, the post-conviction court expressly discredited Petitioner's testimony and accredited trial counsel's testimony on this issue. Trial counsel denied telling Petitioner that "the county was full of racists[.]" Counsel testified he discussed with Petitioner the makeup of the jury pools in McMinn County, "being conservative . . . and being overwhelmingly white." He explained that he "would be doing [Petitioner] a disservice if [he] didn't talk to [him] about the jury pools[.]"

The record supports the post-conviction court's determination that Petitioner failed to prove by clear and convincing evidence that counsel's performance fell below objective standards of reasonableness and that there is a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59. Petitioner is not entitled to relief.

## II. Knowing and Voluntary Guilty Plea

When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012), *no perm. app. filed*. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats[.]" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what

the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id*. at 74. A reviewing court must examine the totality of the circumstances to determine if a guilty plea was knowing and voluntary. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In denying relief on this claim, the post-conviction court found that Petitioner was familiar with criminal proceedings; that he was represented by competent counsel who explained his various options and potential outcomes; and that Petitioner pleaded guilty to avoid the risk of a harsher punishment after a trial. *See Blankenship*, 858 S.W.2d at 904.

Petitioner argues that because the State did not present the transcript of the plea submission hearing at the post-conviction hearing, there is "insufficient proof" that his plea was voluntary. As previously noted, the record contains a transcript of Petitioner's guilty plea submission hearing; the transcript was filed with the criminal court clerk, and it contains a certification by the trial court authenticating the transcript and a certificate executed by the official court reporter. The transcript fully supports the post-conviction court's factual findings and its determination that Petitioner knowingly and voluntarily pleaded guilty. Petitioner has not overcome the presumption of truth attendant to his statements under oath and of the trial court's findings at the plea hearing. *See Blackledge*, 431 U.S. at 73-74.

- 14 -

The post-conviction court properly denied this claim, and Petitioner is not entitled to relief from this court.

**<u>Conclusion</u>**

Based upon the foregoing, we affirm the judgment of the post-conviction court.


 **s/*Robert L. Holloway, Jr.***
ROBERT L. HOLLOWAY, JR., JUDGE